KEVIN ROCKOFF (SBN 260981)
LAW OFFICES OF KEVIN A. ROCKOFF
120 Tustin Ave, Suite C, #135
Newport Beach, CA 92663
Phone: 949-329-8259
Email: contact@valorlaw.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STEVE ROSENE, individual<br><br>Plaintiff,<br><br>v.<br><br>ALLEVIATE FINANCIAL SOLUTIONS LLC, a California Limited Liability Company, MICHAEL BARSOUM, an individual, and SET FORTH, INC. LLC, an Illinois Limited Liability Company<br><br>Defendants. | Civil Case No 8:24-cv-02086<br><br>COMPLAINT FOR VIOLATIONS OF:<br><br>1. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c) and 47 U.S.C. §227(b)]<br>2. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff Steve Rosene with his Original Complaint and will allege and show as follows:

## NATURE OF THE CASE

1. Plaintiffs bring this action individually seeking damages and any other available legal or equitable remedies resulting from the illegal actions of ALLEVIATE FINANCIAL SERVICES, LLC. ("Alleviate" or "Defendant"), MICHAEL BARSOUM, CEO of Alleviate ("Barsoum"), and SET FORTH, INC ("Forth" or "Defendant") collectively "Defendants", in negligently, knowingly and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C.* § 227, et seq. ("TCPA") and related regulations, thereby invading Plaintiff's privacy.

## PARTIES

2. Plaintiff STEVE ROSENE ("Plaintiff" or "Rosene") is a natural person, a resident of this District and was present in California for all calls received in this case.

3. Defendant Alleviate is a Limited Liability Company organized and existing under the laws of California and can be served via registered agent CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

4. Defendant Barsoum is a natural person, resident of California, Chief Executive Officer of Defendant Alleviate, personally directed and participated in the calls alleged herein, and can be served at 4 Park Plaza, Suite 1450, Irvine, CA 92614.

5. Defendant Set Forth, Inc. is a Limited Liability Company organized and existing under the laws of Illinois and can be served via General Counsil, Michael McKnight, at 1900 E Golf Rd, Suite 550, Schaumberg, IL 60173

## JURISDICTION AND VENUE

6. **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012).

7. **Venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at California residents, including the Plaintiff—occurred in this District and because the Plaintiff was residing in the Southern District of California when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012)

14. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

16. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

17. The Federal Communications Commission found that it "must mandate procedures

for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

18. These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7). Specifically, these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. 47 CFR 64.1200(d)(4) (emphasis added).

19. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47 CFR 64.1200(d).

20. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

demonstrate that they have provided the required information on each of the calls.

21. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> *In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

22. These requirements are separate but cumulative. In other words, a company must comply with both the required information and comply with the national "do not call" database regulations ("DNC"). A failure to comply with either is a distinct violation of 47 U.S.C. § 227(c).

23. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

24. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and

ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

25. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, including as described herein as to Defendants, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

26. Individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.").

27. A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*,

No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 416 (D.Md. 2011)(reasoning that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008).

28. The regulations enforcing and interpreting the TCPA, also require that any person or entity that engages in telemarketing must transmit caller identification information.[2] 47 C.F.R. § 64.1601(e). This prevents a telemarketer from "spoofing" (using a false identification for their marketing calls) the telephone number from which the telemarketing call is made. Additionally, the regulations require telemarketers to -provide the name of the telemarketer when available by the telemarketer's carrier and the seller's customer service number.

29. Here, Defendants did not comply with the requirements of 47 C.F.R. **§ 64.1601(e)** as it provided incorrect information regarding the number from which the calls were being made**.**

## FACTUAL ALLEGATIONS

30. Plaintiff was registered on the National Do Not Call List at all times relevant to

---

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering information, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. § 64.1601(e).

this Complaint.

31. Plaintiff registered his phone number to gain seclusion from unwanted solicitation phone calls.

32. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with family and friends. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, playing music through his house speakers, timing food when cooking, and sending and receiving text messages. Plaintiff pays for the cell phone from his personal accounts and the phone is not primarily used for any business purpose.

33. Plaintiff did not consent to any of the phone calls alleged herein.

34. Alleviate hired and authorized National Credit Services, Self Debt, US Financial, and Secure One Capital to make phone calls on its behalf to solicit the debt relief services of Alleviate.

35. Plaintiff received the first phone call on July 4, 2024, that displayed 949-818-1976 on the caller identification. Plaintiff answered the phone and spoke to Frank with National Credit Services. Plaintiff told Frank that it was the 4th and not interested and to stop calling.

36. Plaintiff received the second phone call on July 4, 2024, that displayed 949-804-

9867 on Plaintiff's caller identification. Plaintiff answered the phone and then hung up when he was told that it was National Credit Services.

37. Plaintiff received the third phone call on July 4, 2024, that displayed 949-804-9778 on Plaintiff's caller identification. Plaintiff answered the phone and then hung up when he was told that it was once again National Credit Services.

38. Plaintiff received the fourth phone call on July 6, 2024, that displayed 949-229-2043 on Plaintiff's caller identification. Plaintiff answered the phone and was told that it was Jason Black with National Credit Services. The phone call resulted in Jason Black directing Plaintiff to the website for selfdebt.com.

39. Plaintiff received the fifth phone call on July 6, 2024, that displayed 561-273-7983 on Plaintiff’s caller identification. The call was from Jason Black with Self Debt. The phone call resulted in Jason Black emailing a contract to Plaintiff on behalf of Alleviate.

40. Plaintiff received the sixth phone call on July 8, 2024, that displayed 561-273-2983 on Plaintiff’s caller identification. The phone call was from someone with Self Debt and resulted in Plaintiff telling them that he was not interested and to stop calling.

41. Plaintiff received the seventh phone call on July 8, 2024, that displayed 949-804-9784 on the caller identification. The phone call was from someone with Self Debt. Plaintiff did not answer the phone call.

42. Plaintiff received the eighth phone call on July 8, 2024, that displayed 949-386-1437 on the caller identification. The call was from Kate with US Financial. The phone

call was dropped after five minutes.

43. Plaintiff received the ninth phone call on July 9, 2024, that displayed 949-393-5517 on the caller identification. The call was from Joe with US Financial. The phone call was dropped after five minutes.

44. Plaintiff received the tenth phone call on July 9, 2024, that displayed 949-799-3129 on the caller identification. The call was from US Financial and resulted in Plaintiff being transferred to Steve Lucio with Secure One Capital. Plaintiff told him that he was not interested and to stop calling.

45. Plaintiff received the eleventh phone call on July 9, 2024, that displayed 949-625-6366 on the caller identification. The call was from Steve Lucio with Secure One Capital. The call resulted in a contract being sent to Plaintiff on behalf of Alleviate.

46. On July 9, 2024, Plaintiff received an email from Steve Lucio with Secure One Capital which resulted in Plaintiff responding that he was not interested, and to stop calling.

47. Plaintiff received the twelfth phone call on July 10, 2024, that displayed 949-625-6366 on the caller identification. Plaintiff did not answer the call which resulted in a voicemail from Steve Lucio with Secure One Capital confirming that he had received Plaintiff’s email saying that he was not interested. Steve Lucio requested that Plaintiff call him back at 949-625-6366 to discuss everything. Plaintiff did not respond.

48. Plaintiff received the thirteenth phone call on July 12, 2024, that displayed 561-

778-1301 on the caller identification. The call was a call from Norman with Alleviate which resulted in Plaintiff saying he was not interested and to stop calling.

49. Plaintiff received the first text message on July 12, 2024, that displayed 561-273-7983 on the caller identification. The text was from Jason Black with Self Debt. Plaintiff responded that he had already told him that he was not interested.

50. Plaintiff received the second text message on July 12, 2024, that displayed 561-273-7983 on the caller identification. The text message was from Jason Black with Self Debt sharing the link https://alleviatefinancial.com/ to Alleviate instructing Plaintiff to open the link. Plaintiff did not respond.

51. Plaintiff received the fourteenth phone call on July 12, 2024, that displayed 949-429-3316 on the caller identification. The call was from someone with Secure One Capital. The call resulted in Plaintiff saying he was not interested and to stop calling.

52. Plaintiff received his fifteenth phone on July 17, 2024, that displayed 949-613-0218 on the caller identification. The call was from Stacy with National credit services following up about the contract that had been sent on behalf of Alleviate. Plaintiff once again said he was not interested and to stop calling.

53. Plaintiff received his sixteenth phone call on July 18, 2024, that displayed 949-490-1736 on the caller identification. The call was from Adam with Secure One Capital wanting to complete the contract that had been sent to Plaintiff on behalf of Alleviate. Plaintiff once again said he was not interested and to stop calling.

54. Because the contracts sent to Plaintiff are all for Alleviate it has been determined that each of the calls on July 4th, July 6th, July 8th, July 9th, July 10th, July 12th, July 17th, and July18th, are all on behalf of Alleviate.

55. Plaintiff did not have an existing business relationship with Defendants and never consented to receive phone calls from Defendants.

56. Plaintiff did not consent to any of the calls alleged herein.

57. Table A shows the calls sent to Plaintiff by Defendants.

TABLE A:

| **Number:** | **Date:** | **Time:** | **Caller ID:** | **Notes:** |
|---|---|---|---|---|
| **1.** | 07/04/2024 | 11:35AM | 949-818-1976 | Call from Frank with National Credit Services (NCS)Said not interested, stop calling. |
| **2.** | 07/04/2024 | 11:54AM | 949-804-9867 | Answered and hung up when told it was (NCS). |
| **3.** | 07/04/2024 | 2:12PM | 949-804-9778 | Answered and hung up when told it was (NCS). |
| **4.** | 07/06/2024 | 11:11AM | 949-229-2043 | Call from Jason black with (NCS) Directed me to the website selfdebt.com |
| **5.** | 07/06/2024 | 12:01PM | 561-273-7983 | Call from Jason Black with Self Debt. Contract emailed on behalf of Alleviate. |
| **6.** | 07/08/2024 | 9:11AM | 561-273-7984 | Call from Self Debt. Told them not interested, stop calling. |
| **7.** | 07/08/2024 | 9:58AM | 949-804-9784 | Call from Self Debt. Did not answer |
| **8.** | 07/08/2024 | 5:00PM | 949-386-1437 | Call from Kate with US Financial. Call dropped. |
| **9.** | 07/09/2024 | 9:12PM | 949-393-5517 | Call from Joe with US Financial. Call dropped. |

| | | | | |
|---|---|---|---|---|
| **10.** | 07/09/2024 | 11:23AM | 949-799-3129 | Call from US Financial. Transferred to Steve Lucio with Secure One Capital (SOC). Told him not interested, stop calling. |
| **11.** | 07/09/2024 | 1:23PM | 949-625-6366 | Call from Steve Lucio with (SOC). Contract sent for Alleviate. |
| **12.** | 07/09/2024 | | Email | Email sent from Steve Lucio with (SOC), responded not interested, stop calling. |
| **13.** | 07/10/2024 | 1:19PM | 949-625-6366 | Call from Steve Lucio with (SOC). Did not answer. VM left confirming Lucio had received the not interested email and requested a call back. |
| **14.** | 07/12/2024 | 12:22PM | 561-778-1301 | Call from Norman with Alleviate. Said not interested, stop calling. |
| **15.** | 07/12/2024 | 12:22PM | 561-273-7983 | Text from Jason Black with Self Debt, said not interested. |
| **16.** | 07/12/2024 | 12:23PM | 561-273-7983 | Text from Jason Black with the link https://alleviatefinancial.com |
| **17.** | 07/12/2024 | 4:30PM | 949-429-3316 | Call from someone with (SOC). Said not interested, stop calling. |
| **18.** | 07/17/24 | 11:46AM | 949-613-0218 | Call from Stacy with National Credit Services. Follow up about contract sent for Alleviate. Said not interested. Stop calling. |
| **19.** | 07/18/2024 | 3:52PM | 949-490-1736 | Call from Adam with Secure One Capital. Told him I am not interested and to stop calling. |

58. Each call was placed without the maintenance of an internal do-not-call policy. Every call was placed without training their agents/employees on the use of an internal do-not-call policy.

59. No emergency necessitated the calls.

60. Through information and belief, Defendants did not have a written do-not-call policy while sending Plaintiff unsolicited calls.

61. Defendants placed multiple unauthorized phone calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

62. Every phone call was a knowing and willful violation because the act was intentional. A phone call can only be purposefully placed and cannot be an accident or mistake.

**DEFENDANT BARSOUM IS PERSONALLY LIABLE**

63. Defendant Barsoum is personally liable for all calls made to Plaintiff on behalf of Defendant Alleviate as he personally directed the phone calls to be made.

64. Defendant Barsoum wrote the scripts that their agents used on said calls described herein and trained their agents on live calls and on the usage of the scripts with potential customers.

65. Defendant Barsoum purchased the equipment used to make the prerecorded phone calls and directed that the equipment be used to place prerecorded phone calls.

66. Defendant Barsoum directed the telephone solicitors on which states to call, and during which hours to call.

67. Defendant Barsoum knowingly and willfully violated the TCPA regulations and does so because it benefits him and his company.

68. Defendant Barsoum either directly ordered his agents to ignore the National Do-Not-Call Registry, or indirectly by refusing to purchase the National Do-Not-Call Registry.

69. Defendant Barsoum is the CEO of Defendant Alleviate and controls the day-to-day operations of Alleviate and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

70. Defendant Barsoum is the mastermind who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

71. Defendant Barsoum is well aware that the conduct violated the TCPA and refused to alter their behavior and has done nothing to stop the unlawful, fraudulent, and unethical behavior they directed.

**ALLEVIATE IS VICARIOUSLY LIABLE FOR THE PHONE CALLS**

72. Alleviate is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as National Credit Services, Self Debt, US Financial, and Secure One Capital. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

73. Alleviate markets debt relief services through direct telephone solicitation by its hired telemarketers, National Credit Services, Self Debt, US Financial, and Secure One Capital, who acts on its behalf. National Credit Services, Self Debt, US Financial, and Secure One Capital enrolls potential clients for Alleviate and accepts those leads with full knowledge that the phone call that contacted the customers violated the TCPA.

74. National Credit Services, Self Debt, US Financial, and Secure One Capital made the phone calls on behalf of Alleviate with the actual knowledge and authority of Alleviate.

75. Alleviate directs, controls, authorizes, and pays National Credit Services, Self Debt, US Financial, and Secure One Capital to generate leads for legal services through telephone solicitation. Moreover, they require, authorize, or at least permit National Credit Services, Self Debt, US Financial, and Secure One Capital telemarketers to solicit explicitly for debt relief representation.

76. Alleviate sets the criteria for qualifying leads, which National Credit Services, Self Debt, US Financial, and Secure One Capital must follow, and National Credit Services, Self Debt, US Financial, and Secure One Capital transfer leads qualified on those criteria exclusively to Alleviate. Plaintiff is unaware of the qualifying thresholds, but the salient question is how much consumer debt the potential client holds.

77. On information and belief, Alleviate wrote or at least approved the call script National Credit Services, Self Debt, US Financial, and Secure One Capital telemarketers

use when qualifying leads for Alleviate.

78. Alleviate maintained interim control over National Credit Services, Self Debt, US Financial, and Secure One Capital by controlling how and under what circumstances they would accept clients from National Credit Services, Self Debt, US Financial, and Secure One Capital.

79. National Credit Services, Self Debt, US Financial, and Secure One Capital telemarketers are Alleviate's associates and do nothing to disturb the impression that they work for and speak and act on behalf of Alleviate.

80. National Credit Services, Self Debt, US Financial, and Secure One Capital telemarketers' initial calls through Defendant Alleviate's acceptance of a completed representation application, the telemarketing of Alleviate's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Alleviate, the principals, with National Credit Services, Self Debt, US Financial, and Secure One Capital acting as Alleviate's agents.

81. National Credit Services, Self Debt, US Financial, and Secure One Capital, acting with actual and implied authority, made the prohibited calls, and qualified Plaintiff according to Alleviates criteria

**FORTH IS VICARIOULSY LIABLE FOR THE PHONE CALLS**

82. Forth's involvement with Alleviate, through direct affiliation, financial benefit, and knowledge of the marketing practices employed, supports the position that liability

extends to Forth jointly and severally.

83. Regardless of whether or not the calls made to Plaintiff were made from the phone lines owned or operated directly by Forth, Forth is still held vicariously liable and jointly and severely liable for these violations, despite and distinctions between the perspective roles do to Forth's involvement as the designated financial account software provider for Alleviate.

84. Courts have determined that companies may be held liable for the acts of third-party marketers when they are involved in the planning, approval, or execution of the marketing strategy, even if they do not make the calls themselves. (*See In re Dish Network, LLC*, 28 FCC Rcd 6574 (2013) and *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)).

**INJURY TO PLAINTIFF**

85. Defendants' calls invaded Plaintiff's privacy and were a nuisance.

86. Defendants made numerous calls on the fourth of July even after Plaintiff said he was not interested, disrupting the time that Plaintiff was spending with family and friends.

87. Defendants made multiple calls and sent numerous texts even after Plaintiff told them to stop calling.

88. Defendants' calls confused Plaintiff and caused Plaintiff to become aggravated.

89. Defendants did not properly identify themselves and the company on whose behalf

the phone calls were being made, causing Plaintiff to spend valuable time investigating the origin of the calls.

90. Plaintiff was angry, frustrated, and annoyed by Defendants' phone calls.

91. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

92. Defendants' calls resulted in Plaintiff using his battery which resulted in more frequent charging of his cell phone, which reduced Plaintiff's enjoyment of his cell phone.

**COUNT ONE:**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**
**(Against All Defendants)**

93. Plaintiff realleges and re-adopts paragraphs 1 through 92 of the Complaint as if fully set forth herein.

94. Defendants placed, or have placed on their behalf, eighteen (18) telemarketing telephone calls to Plaintiff's cellular telephone number without prior express written consent.

95. Defendants has therefore violated 47 U.S.C. § 227(b).

96. As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

97. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

**COUNT TWO:**

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

98. Plaintiff incorporates the preceding paragraphs 1 through 92 as if fully set forth herein.

99. Defendants placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone number.

100. Plaintiff's telephone number was on the National Do-Not-Call Registry for more than 30 days at the time of calls.

101. Plaintiff received two or more such calls in a 12-month period.

102. Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5) for each of eighteen (18) solicitation phone calls.

103. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Steve Rosene prays for judgment against the Defendants as follows:

A. An order declaring that Defendants' actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

B. An order declaring that Defendants' actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

C. An award of statutory damages under the Telephone Consumer Protection Act;

D. An award of treble damages for each and every violation, pursuant to *47 U.S.C.* § 227 (b)(3)(B) and 47 USC § 227(b)(3)(C);

E. All other relief, in law and in equity, to which Plaintiff may be entitled, to which the Court deems just and proper.

///

///

///

///

///

**DEMAND FOR JURY TRIAL**

104. Plaintiff hereby demands a trial by jury on all claims so triable.

LAW OFFICES OF KEVIN A. ROCKOFF.

September 25, 2024. Respectfully Submitted,

/s/ Kevin A. Rockoff /s/

Kevin A. Rockoff

Law Offices of Kevin A. Rockoff

Attorney for Plaintiff